IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REX REAL ESTATE I, L.P. | § | |
| | § | |
| VS. | § | NO. A-19-CV-696-RP |
| | § | |
| REX REAL ESTATE EXCHANGE, INC. | § | |

**ORDER**

Before the Court are Defendant's Motion to Strike Expert Report and Exclude Testimony of Plaintiff's Expert Jeffery Stec (Dkt. No. 36), and Defendant's Motion to Exclude Testimony by Dr. Jeffery Stec (Dkt. No. 120), along with and the associated responses and replies. The District Court referred this discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. STANDARD**

Federal Rule of Evidence 702 sets the standard the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999);

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of an expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593*; Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. FED. R. EVID. 104(A). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276. Pursuant to Rule 403, the Court may also exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403.

## II. ANALYSIS

Plaintiff, Rex Real Estate I, LP ("Real Estate") has retained Dr. Jeffery A. Stec to conduct survey research and provide expert testimony related to its trademark infringement suit against Defendant, Rex Real Estate Exchange, Inc. ("Exchange"). Stec holds Ph.D. and Master's degrees in Economics from Ohio State University, as well as Bachelor's degrees in Philosophy and Psychology from Cornell University and in Economics from the University of Illinois-Chicago. He serves as a Managing Director with Berkeley Research Group, LLC, and specializes in the application of survey research to the valuation of various forms of intellectual property. Stec has served as an expert witness on patent, copyright, and trademark infringement and trade secret misappropriation litigation, and has experience designing and conducting survey research.

Exchange has filed two motions related to the expert opinions provided by Stec in this case. Exchange's first motion seeks to exclude Stec's report and testimony regarding the likelihood of confusion in the marketplace related to the parties' marks, on the basis that Stec used an unreliable survey method. Dkt. No. 36. Exchange separately moves to exclude Stec's testimony on actual confusion, corrective advertising, and unjust enrichment under Federal Rule of Evidence 702, arguing that Real Estate is impermissibly attempting to "introduce its own opinions, or its attorneys' arguments, under the guise of expert testimony." Dkt. No. 120 at 1.

### A. Motion to Strike - Likelihood of Confusion Survey

Exchange's first motion involves a survey Stec conducted on the likelihood of confusion between the parties' marks ("LOC Survey"). According to Exchange, the LOC Survey and Stec's related testimony should be excluded because Stec conducted the survey using a "highly-leading," modified *Squirt* method—so-named based on the decision in *Squirt Co. v. Seven-Up Co.,* 628 F.2d

1086 (8th Cir. 1980)—which Exchange asserts was an inappropriate method based on the facts of the case, thus unreliable under Rule 702. *See* Dkt. No. 36. Exchange further contends exclusion is warranted because the LOC Survey's probative value is outweighed by its risk of prejudice and confusion under Rule 403. Real Estate responds that Stec's use of the *Squirt* survey methodology was appropriate and that Stec followed typical, well-accepted practices. *See* Dkt. No. 39. Real Estate also disputes that the LOC Survey is inadmissible under Rule 403, and argues overall that Exchange's criticisms go to weight, not admissibility.

In general, "[m]ethodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004). Thus, "[i]t is routine to admit a relevant survey; any technical unreliability goes to weight, not admissibility." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992). Generally, courts leave "the format of the questions and the manner of conducting the survey for consideration as to the weight of this evidence." *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 447 (5th Cir. 1973). Flaws in methodology must be "serious and pervasive" to justify exclusion under Rule 702. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013). "As long as [it is] conducted according to accepted principles . . . survey evidence should ordinarily be found sufficiently reliable under *Daubert*. Unlike novel scientific theories, a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n. 8 (9th Cir. 1997); *see also* MANUAL FOR COMPLEX LITIGATION § 11.493 (4th ed. 2004) ("Even if the court finds deficiencies in the proponent's showing [of foundation], the court may receive the evidence subject to argument going to its weight and probative value.").

Here, the bases for Exchange's criticism of Stec's LOC Survey are alleged problems with the survey method Stec employed. Exchange argues that Stec's employment of a *Squirt,* or "product

4

array," survey method was inappropriate given the facts of this case and thus unreliable under Rule 702. According to Exchange, Stec should have used the method detailed in *Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976) because it ensures that survey respondents are not influenced by the so-called demand effect, which may cause respondents to seek out similarities due to the survey's conditions. In the *Eveready* method, respondents are shown the allegedly infringing product followed by a series of open-ended questions to determine whether they associate it with the plaintiff's product. Comparatively, in the *Squirt* approach, the survey subjects are shown both products and are asked questions designed to determine if the subjects are confused regarding the source of the two products. In this case, Stec employed the *Squirt* method for the LOC Survey. Sequentially, for a period of at least five-seconds, respondents viewed the websites of Real Estate, Exchange, and two other real estate companies—Redfin and Henry S. Miller—intended to serve as "controls." The subjects were then asked a series of questions regarding whether they thought the services offered on the last website they viewed were offered by, affiliated with, sponsored by, or approved by the company shown in the first website they viewed.

Notably, Exchange does not assert that the *Squirt* method is inherently unreliable, but rather that it was inappropriate in this case. Exchange argues that the *Squirt* method is only properly utilized in cases involving marks that are less well-known, and that because Real Estate asserts in its pleadings that its brand is "very well-known," the *Eveready* method should have been utilized. Ironically, Exchange's position in this case is that Real Estate's mark is *not* famous. *See, e.g.,* Dkt. No. 36 at 6 (Exchange acknowledging that it disputes Real Estate's claim that its mark is highly regarded); Dkt. No. 101-2 (Exchange's summary judgment motion contending Real Estate's mark is not well-known). Because the strength of Real Estate's mark is disputed, this argument is at best premature, and Stec's methodology cannot be deemed unreliable on this basis. Exchange further asserts that the *Squirt* method is inappropriate where there is no evidence that the parties' respective

5

marks are encountered sequentially or side-by-side in the marketplace. According to Exchange, Real Estate and Exchange do not compete, do not serve the same market, and do not serve the same geographic regions. Exchange asserts this means potential customers are not likely to see Real Estate's and Exchange's marks sequentially in the marketplace and that use of the *Squirt* method was inappropriate. Real Estate disputes the assertion that the parties do not compete, arguing that the parties are direct competitors and exist proximately in the market. All of these disputes are appropriate areas for cross-examination, but do not justify exclusion under Rule 702.

Exchange's argument that the LOC Survey should be excluded under Rule 403 is likewise without merit. Exchange argues that Stec used a test environment that did not resemble the actual marketplace, asked leading survey questions, and artificially inflated the purported "confusion" between Real Estate and Exchange's services based on the creation of a "'demand effect' that suggests the responses it seeks." Dkt. No. 36 at 1. Exchange points to the fact that respondents also confused the control companies, Redfin and Henry S. Miller, as evidence that the survey is of little probative value. As noted at the outset, it is "routine to admit a relevant survey; any technical unreliability goes to weight, not admissibility." *E. & J. Gallo Winery*, 967 F.2d at 1292. The alleged deficiencies Exchange points to are insufficient to support the wholesale exclusion of Stec's testimony, and the jury will be able to decide whether the alleged flaws undermine his conclusions. Since the *Squirt* method is an accepted method of determining the likelihood of confusion, any alleged deficiencies in Stec's implementation of that methodology are properly addressed through cross-examination at trial.

**B.     Motion to Exclude - Confusion, Corrective Advertising & Unjust Enrichment**

Exchange's second motion involving Stec seeks to exclude his testimony on the issues of actual confusion, corrective advertising, and unjust enrichment. Exchange argues Stec's opinions should be excluded because they are unreliable and not helpful to the trier of fact as required by

6

Federal Rule of Evidence 702. *See* Dkt. No. 120. In response, Real Estate argues that Exchange's complaints go to the weight of Stec's opinions rather than their admissibility. Dkt. No. 131.

      1.      **Actual Confusion**

In moving to exclude Stec's opinion on actual confusion, Exchange first asserts that Stec is not an expert on actual confusion and thus cannot provide an expert opinion on the issue. This argument is unfounded. Stec's education and expertise in economics, consumer psychology, and survey research demonstrates that he is qualified to provide expert testimony on actual confusion. *See* Dkt. No. 120-4 at 21. *See also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 640 (S.D.N.Y. 2016) (holding that "expertise most germane" to an empirical determination of consumer association involves "training or experience performing empirical analyses").

Exchange next argues that Stec's opinion on actual confusion should be excluded because it "purports to do nothing more than stamp [Real Estate's] own assertions with the imprimatur of a so-called expert." Dkt. No. 120 at 6. In challenging Stec's methodology, Exchange argues that Stec did not perform any independent analysis and based his opinion on assumptions, rather than sufficient facts or data or reliable principles and methods. In particular, Exchange takes issue with Stec using declarations, interrogatory responses, and other evidence provided by Real Estate to form his opinion. Real Estate responds that Stec's methodology is not grounds for exclusion and disputes Exchange's contention that Stec merely repeats Real Estate's position, noting that Stec reviewed all of the available evidence, including data from a survey he conducted, before proffering his opinion on actual confusion. Dkt. No. 131 at 3.

Exchange's argument that Stec's opinion on actual confusion should be excluded based on his acceptance of facts supplied by Real Estate's attorney is off the mark. That Stec was not an "eyewitness" to the reported instances of actual confusion on which he bases his opinion is not

7

grounds for exclusion. Rule 703 requires an expert's opinion be based on "facts . . . that the expert has been made aware of *or* personally observed." FED. R. EVID. 703. The rule thus expressly permits Stec to give expert testimony relating to events he did not personally witness. Further, Exchange's reliance on the *New Century* decision is misplaced. *See* Dkt. No. 120 at 5-6; *New Century Financial, Inc. v. New Century Financial Corporation*, No. C-04-437, 2005 WL 5976552 (S.D. Tex. Nov. 29, 2005). In *New Century*, the Court disallowed an expert's testimony on likelihood of confusion where the expert had not conducted any survey nor reviewed any documentary evidence, and merely "assumed the likelihood of confusion" based solely on "two casual conversations" with the plaintiff. 2005 WL 5976552 at *3. Here, Stec formed an opinion on the issue of actual confusion based on review of documentary evidence, interrogatory responses, and sworn deposition testimony—far more than "two casual conversations." *See* Dkt. No. 131 at 7; Dkt. No. 132-1 at 63:11-67:17.

While the law is clear that an expert may not be used as a vehicle through which a party introduces factual testimony in a case that is not otherwise admissible, "experts are permitted to assume the underlying facts that form the basis for their opinions." *Cromwell v. Wal–Mart Stores, Inc.*, 46 Fed. Appx. 733, 2002 WL 1973906, at *2 (5th Cir. Aug. 9, 2002) (citing *Daubert*, 509 U.S. at 592). Challenges to the basis of an expert's opinions generally go to the weight of the evidence. *See Viterbo*, 826 F.2d at 422. That is the case here.

## 2. Corrective Advertising

Exchange next moves to exclude Stec's testimony on the issue of corrective advertising. According to Exchange, Stec merely repeats the corrective advertising estimate provided by Real Estate's founder, Rex Glendenning, without performing any independent analysis or any verification of that estimate's accuracy, rendering Stec's opinion unreliable. *See* Dkt. No. 120 at 7-10. Exchange further complains that Stec bases his opinion on average advertising expenditures rather than precise

spending figures, which Exchange contends would be a more reliable source. *Id.* at 10. Real Estate responds that Stec's opinion is not merely an adoption of Glendenning's estimate, but an opinion that the estimated amount is reasonable given Stec's expertise and experience. Dkt. No. 131 at 8-9. Real Estate disputes the relevance of its prior advertising expenses, average or precise, arguing that for prospective corrective advertising only the amount of advertising necessary to correct the infringing advertising is relevant. *Id.* at 10. The Court finds the criticisms of Stec's methodology and factual basis of his opinion do not render his testimony inadmissible and are more properly subjects for cross-examination.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo*, 826 F.2d at 422. *See also United States v. Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005) ("*Daubert* generally does not, however, regulate the underlying facts or data that an expert relies on when forming her opinion."). Thus, Stec's reliance on an estimate of expenses provided by Real Estate or his consideration of the amount of corrective advertising Real Estate received in an unrelated settlement do not disqualify him, and Exchange can challenge the appropriateness of relying on such evidence in cross-examination. Similarly, the fact that Stec bases his conclusion on average advertising expenditures rather than precise advertising expenses is not a ground for excluding Stec's opinion. It is instead a subject for cross-examination.

"[F]laws, inaccurate conclusions, omissions and/or exaggerations—while perfect fodder for a strenuous cross-examination—are not generally grounds for prohibiting the witness' testimony." *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 2019 WL 2723263, at *2 (S.D. Tex. June 28, 2019). Even reliance on "unverified or inaccurate information" provided by a client does not render an expert's testimony "*per se* unreliable." *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D.

9

254, 267 (W.D.N.Y. 2013). Accordingly, that Stec did not independently verify the figures he based his opinion on does not render his testimony unreliable. To the extent Stec's analysis has any flaws, or the factual bases are incorrect, Exchange is free to address these issues during cross-examination. However, none of the concerns raised by Exchange are sufficient to justify exclusion.

### 3. Unjust Enrichment

Lastly, Exchange objects to Stec's testimony on unjust enrichment as irrelevant and unreliable because Stec did not restrict his calculations to only profits subject to disgorgement. *See* Dkt. No. 120 at 10-11. Exchange asserts that Stec failed to apply any reliable method or analysis to summary revenue figures produced in litigation, alleging his opinion "is nothing more than a restatement of facts asserted by plaintiff and offers no assistance to the jury." *Id.* at 11. Real Estate disagrees, and contends that Exchange's objections to Stec's unjust enrichment testimony go to the merits of the issue, rather than the testimony's admissibility. *See* Dkt. No. 131 at 11-13.

"Under 15 U.S.C. § 1117(a), the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product. The defendant has the burden of showing all elements of cost and other deductions." *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 586 (5th Cir. 1980). *See also, Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 901 (5th Cir. 2016) (quoting *Maltina*). This means that Real Estate's only burden of proof is to prove Exchange's total profits from the allegedly infringing sales with reasonable certainty. It has no burden to prove costs or any other deductions from the total sales figures. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Instead, "the burden is on the infringer to prove: (1) which, if any, of those sales were not attributable to the wrongful act; and (2) deductible costs and expenses to arrive at net profits." *Clearline Techs. Ltd. v. Cooper B–Line, Inc.*, 948 F. Supp. 2d 691, 707 (S.D. Tex. 2013) (internal citations and quotations omitted).

Here, Exchange does not contend that Stec is unqualified to provide an expert opinion on unjust enrichment, or that Stec employed the incorrect legal standard. Rather, Exchange's objection pertains to which revenue figures Stec included in his unjust enrichment calculation. In other words, Exchange objects to the factual basis for his calculations and, therefore, these arguments challenge the weight of Stec's testimony on unjust enrichment, not its admissibility. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2007 WL 7083655, *18 (E.D. Ky. May 12, 2007) ("Whether he correctly uses this test is a matter of weight and not admissibility."). Exchange's complaints address the merits of Stec's calculations and conclusions, not the reliability of his testimony. As such, they are properly addressed on cross-examination at trial.

**ACCORDINGLY**, both of Exchange's motions seeking to exclude testimony by Real Estate's expert Dr. Jeffery A. Stec (Dkt. No. 36 & Dkt. No. 120) are **DENIED**.

SIGNED this 12th day of February, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE