# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **REX REAL ESTATE I, L.P.** | § | |
| | § | |
| **V.** | § | **A-19-CV-696-RP** |
| | § | |
| **REX REAL ESTATE EXCHANGE, INC.** | § | |

## ORDER

Before the Court are Defendant's Motion to Compel (Dkt. No. 86); Plaintiff's Response (Dkt. No. 87); and Defendant's Reply (Dkt. No. 90). The District Court referred this discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. Background

Rex Real Estate I, L.P. ("Real Estate") filed this case against Rex Real Estate Exchange, Inc., ("Exchange") alleging trademark infringement. In this motion, Exchange requests an order (1) to reopen the deposition of Real Estate's founder, Rex Glendenning ("Glendenning") because Real Estate's counsel impeded the examination; and (2) to compel Real Estate to produce its QuickBooks financial records in native format. Exchange also seeks an award of attorneys' fees and costs related to reconvening the deposition of Glendenning. Real Estate opposes the requests, first asserting that the motion is untimely. Real Estate further argues that reopening the deposition is unnecessary and that production of the QuickBooks files is barred by a Rule 29 Agreement.

## II. Analysis

A party may discover "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b). Discovery outside of this scope is not permitted. *Id.* at

(b)(2)(C)(iii). Information "need not be admissible in evidence to be discoverable," but any discovery must be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* The discovery rules are afforded broad and liberal treatment in order to achieve their purpose of adequately informing litigants. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). It is well established that "[m]atters relating to discovery are committed to the discretion of the trial court." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 347 (5th Cir. 2004).

### A. Timeliness of Motion

Real Estate first argues that Exchange's motion to compel should be denied because it is untimely. It points out that discovery closed on July 3, 2019, and because Exchange filed the instant motion after the lapse of the discovery deadline, the motion should be denied. Dkt. No. 87 at 2. Exchange responds that the July 3, 2019 deadline was set when the case was pending in the Eastern District of Texas but the parties agreed to suspend all deadlines and implement a new scheduling order when it was transferred to the Western District of Texas. Dkt. No. 90 at 2, Dkt. No. 90-2 at ¶ 3, p. 15. The docket reflects this agreement: on August 22, 2019, the Court here ordered the parties to submit joint scheduling recommendations and a proposed scheduling order. Dkt. No. 78. The parties' proposed scheduling order was jointly filed on September 6, 2019, (Dkt. No. 81) and adopted by Judge Pitman on October 1, 2019. Dkt. No. 95. While the Amended Scheduling Order recognized the previous discovery deadline of July 3, 2019, it expressly provided, as the parties agreed, that discovery would continue "to resolve a few outstanding discovery disputes," and set a

new discovery deadline of October 10, 2019. Dkt. No. 95 at ¶ 7. Moreover, correspondence between counsel for the parties documents the parties' agreement that the Amended Scheduling Order's reference to "resolve a few outstanding discovery disputes" expressly included this motion to compel. Dkt. No. 90-1 at ¶ 7, p. 19.

Real Estate is correct that, generally, where parties informally agree to continue discovery past the deadline contained in a scheduling order, the court will not intervene in any disputes. Rule CV-16(d). Here, however, the agreement to continue discovery was not merely an informal stipulation between the parties. The record reflects a clear agreement that one of the reasons for the extension of the discovery deadline was to allow the Court to resolve outstanding discovery disputes, including the instant motion. Judge Pitman approved the parties' request when he signed the Amended Scheduling Order, which explicitly ordered a new discovery deadline. Dkt. No. 95. As the motion to compel was filed before the October 10, 2019 deadline set by the Amended Scheduling Order, the motion is timely.

   **B.**  **Deposition of Rex Glendenning**

Exchange's motion seeks to reopen the deposition of Real Estate's founder, Rex Glendenning, arguing that "abusive and disruptive conduct" by Real Estate's counsel impeded a fair examination of Glendenning. Dkt. No. 86 at 1. While a variety of inappropriate remarks and interruptions are cited in Exchange's motion, the primary complaints revolve around Real Estate's counsel instructing Glendenning not to answer certain questions and coaching his answers through speaking objections. *Id.* at 2-5, 8-9. The motion identifies six topics which Exchange argues it could not fairly question Glendenning on as a result of misconduct by counsel for Real Estate. *Id.* at 1, 9. Real Estate responds that reopening the deposition is unnecessary because Glendenning

3

already provided substantive answers to all the topics he was questioned on. Dkt. No. 87 at 4-5. Notably, Real Estate's Response does not defend the propriety of its counsel's instructions to Glendenning not to answer questions, but rather relies on the fact that Glendenning often proceeded to respond to the question despite the instructions. *Id.* at 5. Real Estate also denies that any coaching occurred, though this denial consists mostly of criticisms of the questions asked by counsel for Exchange. *Id.*

Federal Rule of Civil Procedure 30(c)(2) provides that once an objection during a deposition is noted on the record, "the examination still proceeds; the testimony is taken subject to any objection." FED. R. CIV. P. 30(c)(2). Further, "an objection must be stated concisely in a nonargumentative and nonsuggestive manner." *Id.*; *see Wilson v. Martin Cty. Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D. Tex. July 8, 1993). In other words, succinct objections to a question may be raised during an oral deposition, but those objections are merely noted on the record and the deponent must answer the question. There are only three grounds under the Federal Rules for instructing a deponent not to answer a question: (1) "when necessary to preserve a privilege;" (2) "to enforce a limitation ordered by the court;" or, (3) to present a motion to terminate or limit a deposition under Rule 30(d)(3). FED. R. CIV. P. 30(c)(2).

The undersigned has read many depositions in his 20 years on the bench, and took and defended almost as many in private practice. The conduct of Mr. C. Gregory Shamoun—counsel for Real Estate at this deposition—was some of the worst deposition behavior the Court has seen. Shamoun's unprofessionalism is particularly troublesome given that he is experienced enough to know exactly what he was doing, and to know that what he was doing is expressly prohibited by the Federal Rules of Civil Procedure. Yet he did it nonetheless. In plain violation of Rule 30(c)(2),

Shamoun repeatedly instructed Glendenning not to answer questions, yet not once did he do so to preserve a privilege, enforce a court order, or make a Rule 30(d)(3) motion. Instead, he did so merely to interfere with the deposition. Here is one of many examples:

> Q.   Where is Victorville?
> A.   It's northeast of Los Angeles, bedroom community for single-family housing.
> Q.   Do you still own those parcels?
> MR. SHAMOUN: Instruct the witness not to answer.
> MR. FLYNN: On what ground?
> MR. SHAMOUN: That would be proprietary and privileged, Counsel, of what assets Mr. and Mrs. Glendenning own.
> MR. FLYNN: I'm sorry, what privilege? Your obligation, if you instruct the witness, is to identify the legal privilege you're asserting. Do it and we'll move on. What privilege are you asserting?
> MR. SHAMOUN:· I've given you my response. I didn't ask you whether or not you like it or not, or whether or not you think it's sufficient or not. It is my response. If you don't like the instruction, you can file a motion and seek of the court to instruct the witness to answer the question. We are not going to do . . . Anyway, that's the basis for my objection, Counsel.

Dkt. No. 86-2 at 16-17.[1] In addition, Shamoun repeatedly coached Glendenning's answers, such as in the following instance:

> Q. (BY MR. FLYNN) By June 5, 1987, you were conducting business under the name Rex Glendenning Real Estate, at least in part, correct?
> MR. SHAMOUN:  I'm going to instruct the witness not to answer to the extent any answer he gives may be misleading and that counsel is intentionally trying to mislead the witness. The specific exhibit refers to a personal business transaction for the Glendennings, and counsel knows that.  And so subject to the instruction, if you can answer the question without giving a misleading answer, I urge you to do it.

---

[1] *See also*, Dkt. No. 86-2 at 77:14-21 (instructing not to answer based on objection to form, asserting the question is argumentative and mischaracterizes the testimony); *id.* at 80:1-6 ("instruct the witness not to answer. Object to form. You're harassing and badgering the witness, counsel. You're not going to answer it again, Rex"); *id.* at 93:23-25 ("Object. And I instruct the witness not to answer. The answer he gives would be misleading."). In total, Exchange identifies fifteen instances where counsel for Real Estate instructed Glendenning not to answer based on an objection to form. Dkt. No. 90 at 1.

> MR. FLYNN: I'll note one more time that that's a fragrant [sic][2] example of a speaking objection, an effort to coach the witness. It's a clear violation of the rules that govern this procedure.

*Id.* at 46-47.[3] These constant interruptions and lengthy speaking objections violate Rule 30(c)(2)'s requirement that objections be "concise," "nonargumentative," and "nonsuggestive." FED. R. CIV. P. 30(c)(2).

Real Estate concedes that it never made a motion under Rule 30(d)(3)—one of the three reasons the Rule would have permitted Shamoun to instruct his witness not to respond—but makes the rather astounding claim that although it did not do so, it had grounds to, because the actions by *Exchange's counsel* were "sufficient for [Real Estate] to have terminated the deposition and sought a protective order itself." Dkt. No. 87 at 9. This claim is almost as outrageous as Shamoun's behavior at the deposition. Given the behavior he was confronting, Exchange's counsel was a model of patience. Just one of many examples of this is the following exchange, which took place when Shamoun objected to counsel making a "sidebar" comment, when all he was doing was providing the witness with the basic "ground rules" for the deposition:

> MR. SHAMOUN: Object to sidebar.
> Q.(BY MR. FLYNN)· But --
> MR. SHAMOUN: Please don't instruct my client on how to answer questions, Counselor. It's not your job. Thank you. Will you agree to do that?
> MR. FLYNN: No.
> MR. SHAMOUN: You're going to instruct my client on how to answer questions?
> MR. FLYNN: I'm not going to engage in dialogue with you.

---

[2] Mr. Flynn no doubt said Shamoun's statement was a "flagrant" example of a speaking objection, but it is also true that Mr. Shamoun's objection fails the "smell test."

[3] *See, e.g.,* Dkt. No. 86-2 at 52:1-2 (counsel for Real Estate objecting and interjecting that a question was vague, prompting Glendenning to answer with "It's pretty vague"); *id.* at 77:19-21 (counsel for Real Estate commenting that a question "mischaracterizes the witness's testimony," followed by Glendenning answering the question with "I did not say that.").

> MR. SHAMOUN: Well, you were trying to engage in a dialogue with me earlier today. Is there something wrong now?
> MR. FLYNN: Yeah. I was engaging in a dialogue with you when you interrupted the witness and violated the well-understood rules for conducting this procedure.
> MR. SHAMOUN: Don't instruct my client on how to answer a question. You object to the answer as nonresponsive or rephrase your question. Am I clear? Thank you.
> MR. FLYNN: You --
> MR. SHAMOUN: Thank you. Go ahead.
> MR. FLYNN: You shouldn't -- you shouldn't thank me because we're very close to suspending and getting a referee. Again, this is --
> MR. SHAMOUN: Counsel, I've been doing this 30 years, and if you feel like you need to suspend a deposition, you are welcome to do it. I can't stop you. I mean, you look like an elderly gentleman so I'm sure you've suspended hundreds of depositions in your career. And if you feel like the need to do it, have at it. Thank you, sir. Let's go.
> MR. FLYNN: Again, do not speak to me that way.
> MR. SHAMOUN: Let's go, sir. Are you through with the depo?
> MR. FLYNN: Do not speak to me that way. You'll know when I'm through with the depo when I say thank you, Mr. Glendenning, I don't have any more questions. Until then, I'm not done. So just pipe down and abide by the rules.

Dkt. No. 86-2 at 11-12. Suffice it to say that if Real Estate had filed a motion to terminate the deposition under Rule 30(d)(3) based on harassment it would have been denied as groundless. The only harassment or oppression that took place at this deposition was that committed by Shamoun.

The Court thus rather easily reaches the conclusion that Exchange is entitled to reopen the deposition, as a result of Shamoun's constant interruptions and attempts to disrupt the questioning. And the Court is not persuaded by Real Estate's argument that if the deposition is reopened, its scope should be limited to only those questions previously asked. Given the pervasiveness of the improper conduct discussed above, the Court will not limit the deposition to specific questions or topics. The Court will, however, order that the deposition be limited to two hours. Further, the Court orders that Mr. Shamoun may not defend, or be present at, the deposition.[4]

---

[4] The docket sheet for this case reflects that there are currently six other attorneys listed as counsel for Real Estate in the case, and that Mr. Phipps, one of those six, was present for the original deposition of Mr. Glendenning.

Accordingly, the Court **GRANTS** Exchange's motion as to reopening Glendenning's deposition on the terms just stated. The Court declines to supervise the deposition. Even if the Court had the time (and the inclination) to do so, it does not believe its supervision will be necessary, but rather is confident that, with these directions, the attorneys will conduct themselves professionally at the re-opened deposition.

### C.     Reimbursement of Costs and Attorney's Fees

Exchange also seeks recovery of the costs and fees incurred in connection with reopening the deposition of Glendenning. Dkt. No. 86 at 9. In response, Real Estate argues that counsel for Exchange also engaged in misconduct, alleging specifically that he badgered Glendenning by repeatedly moving to strike his answers, laughed at and insulted him, and misrepresented prior testimony in an attempt to get Glendenning to change his answers. Dkt. No. 87 at 8-9. According to Real Estate, "the Court should not reward Defendant's own improper conduct during the deposition by awarding costs or attorney's fees." *Id*. at 10.

Rule 30(d)(2) provides that the court may impose costs and attorney's fees as a sanction where a person "impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). In addition, where a court grants a motion to compel discovery, Rule 37(a)(5) *mandates* the award of fees and expenses to the movant, unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37 (a)(5)(A). As discussed above, counsel for Real Estate engaged in an array of disruptive and inappropriate behavior in clear violation of Rule

30, which impeded the fair examination of Glendenning. The Court finds these flagrant violations warrant sanctions.

Real Estate's attempt to avoid sanctions by claiming misconduct on the part of Exchange's counsel is baseless. As already noted, Mr. Flynn exercised great patience to get through as much substance as he did in the midst of Shamoun's disruptive behavior. None of the actions Real Estate complains of constitute violations of the Federal Rules; indeed, much of what Real Estate cites as "abusive" conduct was the direct result of Shamoun's improper behavior. For example, Real Estate complains of a "lengthy sidebar" by counsel for Exchange, characterizing it as "ire and threats," (Dkt. No. 87 at 8), when a review of the transcript shows Mr. Flynn giving Mr. Shamoun a much-needed lecture on civility and professionalism—one Shamoun would have been wise to follow. *See* Dkt. No. 86-2 at 79-80.[5] Accordingly, the Court finds that awarding Exchange its fees and expenses is appropriate, and will order Real Estate to bear all of the fees and expenses Exchange incurs in taking the additional deposition, as well as its reasonable expenses and attorney's fees incurred in filing the Motion to Compel.[6]

---

[5] And Real Estate complaining of "threats" is the pot calling the kettle black. As Flynn noted in the deposition, Shamoun repeatedly warned Flynn to "remember where you are," and when asked to explain what he meant by that, Shamoun demurred and simply kept repeating the warning. *See* Dkt. No. 86-2 at 12-14. The Court truly does not know what Shamoun meant by this cryptic statement, but in context it reads as a threat, and, notably, the deposition took place at Shamoun's law offices.

[6] The fees and expenses related to completing the deposition means the travel costs for Exchange's deposing attorney, and the attorney's time for traveling to, and taking the deposition. Within 14 days of the date of this order, Exchange shall file a brief advisory identifying the fees and expenses at issue, after following the procedures of Local Rule CV-7(j) (specifically, attempting to reach agreement on the amount, and failing that, submitting the materials called for in Rule CV-7(j). If the matter is contested, Real Estate shall file its response within the time set by Rule CV-7(j).).

### D. Real Estate's QuickBooks Files

Finally, Exchange also seeks to compel Real Estate to produce its QuickBooks files. Exchange contends that Real Estate's marketing and advertising expenses represent key evidence on Real Estate's claims in this case, and production of Real Estate's QuickBooks files is necessary to evaluate those claims. Dkt. No. 86 at 1.[7] Real Estate does not contest the information is relevant to the case, but argues that the parties entered into a Rule 29 agreement that provided the parties only have to produce summaries of financial records, and not the underlying records themselves. Dkt. No. 87 at 3-4. Alternatively, Real Estate argues that Exchange's request for all of its QuickBooks files is disproportionate to the needs of the case and any production should be limited to those QuickBooks records specifically related to marketing and advertising expenditures. *Id.* at 1-2.

Real Estate's claim of the existence of a Rule 29 agreement is not supported by the record. A review of emails between counsel for Real Estate and Exchange shows some discussion of a potential agreement to produce only summarized data on revenue, but it is clear that the parties never actually reached such an agreement. *See* Dkt. No. 87-1; Dkt. No. 90-2. Moreover, the parties' email discussion concerned producing *revenue* data, not marketing expenses, so even if the emails were sufficient to demonstrate an agreement, it would not be applicable to the request for the data at issue here. However, the Court agrees that production of all of Real Estate's QuickBooks files is not warranted, given that Exchange's relevance argument is confined to the need to evaluate Real Estate's marketing and advertising expenses. Thus, the production of the QuickBooks files should be limited to only the records which pertain to Real Estate's marketing and advertising expenditures.

---

[7] The record reflects, and Real Estate does not dispute, that this data is maintained in native QuickBooks format. Dkt. No. 86-4 at 42:9-25; 59:4-24; 62:3-22.

Accordingly, the Court will **GRANT** Exchange's Motion to Compel the production of Real Estate's QuickBooks files, in native format, limited to those reflecting Real Estate's marketing and advertising expenditures and activities.

### III. CONCLUSION

For the reasons and on the terms set forth above, the Defendant's Motion to Compel (Dkt. No. 86) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to reopening the deposition of Rex Glendenning, and as to the production of Real Estate's QuickBooks files related to Real Estate's marketing and advertising expenditures, and **DENIED** as to QuickBooks records which are unrelated to marketing and advertising expenses. The Court further **GRANTS** Exchange the attorney's fees and costs related to filing the instant motion and to reconvening the deposition of Rex Glendenning, as set forth above.

SIGNED this 12th day of February, 2020.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE