**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **REX REAL ESTATE I, L.P.** | § | |
| | § | |
| **v.** | § | **A-19-CV-696-RP** |
| | § | |
| | § | |
| **REX REAL ESTATE EXCHANGE, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Amended Motion for Summary Judgment (Dkt. No. 139);

Defendant's Motion for Summary Judgement (Dkt. No. 140); and the various response and reply

briefs.  The undersigned submits this Report and Recommendation to the United States District

Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules.

**I. GENERAL BACKGROUND**

This is a trademark case.  Plaintiff Rex Real Estate I, L.P. and Defendant Rex Real Estate

Exchange, Inc. are both real estate based companies that conduct business in Texas.  Plaintiff is a

Texas limited partnership that conducts business throughout the state, but primarily focuses on

commercial real estate development in North Texas.  Defendant, on the other hand, is a California

company that operates in the tech-based residential real estate market in Austin, San Antonio, and

Houston, as well as in sixteen states outside of Texas.

Plaintiff claims that Defendant willfully uses Plaintiff's unique and proprietary trademarks

"REX" and "REX REAL ESTATE" in an attempt to market to and solicit customers.  Dkt. No. 1 at

2-3; Dkt. No. 139 at 8.  Plaintiff alleges that it has been using the mark "REX" in connection with

its real estate business since 1987.  Dkt. No. 139 at 7.  Plaintiff first registered a design mark

incorporating "Rex Real Estate" in 2015 (US Reg. No. 4,670,686).  Dkt. No. 139-9.  Subsequently, in 2018, Plaintiff obtained state trademark registrations for REX (Texas Reg. No. 803,055,583) and REX REAL ESTATE (Texas Reg. No. 803,055,593).  Dkt. No. 139-10; Dkt. No. 139-11.  In February 2019, after this litigation began, Plaintiff obtained federal trademark registrations for REX (US Reg. No. 5,670,275; Dkt. No. 139-7) and REX REAL ESTATE (US Reg. No. 5,684,581; Dkt. No. 139-8).

For its part, Defendant contends it acquired the REX mark on September 22, 2014, from non-party Azavea Inc., pursuant to a trademark assignment agreement (US Reg. No. 3,045,177).  Dkt. No. 139-30.  Since the trademark assignment agreement, Defendant has been using the REX mark in connection with its business of technology-based residential real estate services.  In early 2018, Defendant entered the Texas market and has since been using the REX mark in Austin, San Antonio, and Houston.  Dkt. No. 139 at 9.  When the Plaintiff discovered that Defendant had entered the Texas real estate market, Plaintiff sent it a cease and desist letter on May 10, 2018.  *Id.*  A little over a week later, Plaintiff also filed this lawsuit, raising trademark infringement claims under the Lanham Act, as well as trademark infringement, unfair competition, unjust enrichment, injury to business reputation and dilution claims under Texas state and common law.[1]  *See* Dkt. No. 1. Plaintiff seeks permanent injunctive relief, damages, and attorneys' fees.  *Id.*

The parties have filed cross motions for summary judgment.  Plaintiff's motion seeks summary judgment against Defendant on its liability for trademark infringement and requests permanent injunctive relief.  Dkt. No. 139.  Defendant's motion requests judgment in its favor on

---

[1] The suit was originally filed in the Eastern District of Texas, but was transferred to the Western District on July 10, 2019.  *See* Dkt. Nos. 48, 49.

Plaintiff's infringement claims, contending that it has demonstrated that (1) Plaintiff does not have

a legally protectable mark; (2) Plaintiff does not have priority of use; (3) there is no likelihood of

confusion; and (4) laches bars Plaintiff's claims.  Dkt. No. 140.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The

party moving for summary judgment bears the initial burden of "informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes demonstrates the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I.

Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective

burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United

States*, 391 F.3d 621, 625 (5th Cir. 2004).

The Court must view the summary judgment evidence in the light most favorable to the

non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).  When there are

cross-motions for summary judgment, the Court must examine "each party's motion independently"

and view "the evidence and inferences in the light most favorable to the nonmoving party." *JP

Morgan Chase Bank, N.A. v. Data Treasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016).  The

non-movant must respond to the motion by setting forth particular facts indicating that there is a

genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). Simply because both parties are requesting summary judgment does not mean that the court must grant judgment to one of them. "Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law. . . ." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Each party may move for summary judgment using different legal theories that rely on different sets of material facts. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. *See id.*

## III. EVIDENTIARY OBJECTIONS

As an initial matter, Defendant objects to certain summary judgment evidence submitted by Plaintiff. Dkt. No. 124. Specifically, Defendant moves to strike the 103 declarations submitted as Exhibit 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment, arguing that Plaintiff failed to identify these individuals in its initial disclosures and thus the declarations should be struck under Federal Rule of Civil Procedure 37(c)(1). Dkt. No. 124; *see* Dkt. Nos. 118-7; 118-8. Defendant further argues that the declarations should be struck under Federal Rules of Evidence 701

and 704 as unauthenticated hearsay and because the statements constitute impermissible legal conclusions from fact witnesses.  Dkt. No. 124.

Plaintiff responds that it did not give notice of the declarations sooner because the Defendant had not pled the affirmative defense of lack of secondary meaning, and thus the evidence of secondary meaning contained in the declarations was irrelevant.  Dkt. No. 133 at 6.  Plaintiff notes that it is entitled to a presumption of secondary meaning, and because Defendant did not raise the issue of lack of secondary meaning in its Answer or discovery requests, until Defendant raised the defense in its Motion for Summary Judgment there was not reason for it to gather evidence related to secondary meaning.  *Id.* at 8.  Plaintiff further argues that even if Defendant had raised the defense of secondary meaning, Plaintiff has established secondary meaning as a matter of law.  *Id.* at 9.

Under Federal Rule of Civil Procedure 26(a)(1), a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  FED. R. CIV. P. 26(a)(1).  Under Rule 26(e), a party must supplement or correct its disclosures and responses to discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  FED. R. CIV. P. 26(e).  Under Rule 37(c)(1), if a party fails to disclose or supplement as required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).

Plaintiff did not disclose the 103 declarants as individuals who were likely to have discoverable information under Rule 26(a)(1)(A)(I).  But Plaintiff is correct that Defendant did not

raise the issue of lack of secondary meaning until its Motion for Summary Judgement. Thus, the failure to disclose the individuals was substantially justified and harmless. Accordingly, Defendant's Motion to Strike Exhibit 3 to Plaintiff's Response (Dkt. No. 124) is **DENIED**.

## IV. ANALYSIS

Both parties move for summary judgment on the question of whether Defendant infringed on Plaintiff's trademark rights. Plaintiff also seeks a permanent injunction against Defendant to prevent ongoing infringement, as well as an award of attorney's fees.

### A.       Trademark Infringement

To prevail on its claims of trademark infringement, Plaintiff must establish: (1) it possesses a legally protectable trademark and (2) Defendant's use of this trademark "'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act. *Id.* (citing *Hot–Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)).

### 1.       Possession of a Legally Protectable Mark

The first element of trademark infringement is possession of a legally protectable mark. *American Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning. *Id.* Marks are classified along a spectrum, listed here in order of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed

inherently distinctive and are entitled to protection." *Id.* At the other end of the spectrum, generic marks are not registrable as trademarks. *Id.* Descriptive marks are not "inherently distinctive" but may be registered if they have "become distinctive of the applicant's goods in commerce." *Id.*

Notably, a court may cancel a registered mark if it is found to be either generic, or descriptive and lacking in secondary meaning. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009) (citations omitted). In *Amazing Spaces, Inc. v. Metro Mini Storage*, the Fifth Circuit considered whether a registration and its attendant presumption foreclose summary judgment. 608 F.3d 225, 238-39 (5th Cir. 2010). It determined that an accused infringer could introduce evidence that the mark is not distinctive and therefore reduce the "presumption of validity to evidence that the [Patent and Trademark Office] is of the opinion that the [disputed word or symbol] is sufficiently distinctive to be legally protectable as a mark." *Id.* at 239. Importantly for these purposes, whether a mark is generic, and whether a mark has gained secondary meaning are both questions of fact. *Id.* at 227; *Bd. of Supvsrs. for LSU v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008). Because categorization is a question of fact, summary judgment is rarely appropriate. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 n. 12 (5th Cir. 1980); *see also Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 845 n. 13 (5th Cir. 1990) ("[I]t will be the exceptional case which may be disposed of on these grounds.").

Here, Plaintiff holds both federal and state trademark registrations for "REX" and "REX REAL ESTATE". *See* Dkt. No. 139 at 10. Defendant argues that despite the registrations, Plaintiff's marks are not protectable because they are generic. Specifically, Defendant contends that the marks are descriptive and that Plaintiff has not established secondary meaning. Plaintiff responds that its marks are "inherently distinctive under the law because they do not identify a

characteristic or quality of the real estate services they are being used in connection with." Dkt. No. 139 at 10. In support of its argument that its marks are inherently distinctive, Plaintiff points to the fact that it did not have to provide proof of secondary meaning when it registered the marks.

Plaintiff's marks REX and REX REAL ESTATE are derived from the first name of one of Plaintiff's founders—Rex Glendenning. Dkt. No. 117-10 at 68:12-22. "Personal names—both surnames and first names—are generally regarded as descriptive terms that require proof of secondary meaning." *Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 747 (W.D. Tex. 2014); *see also* 2 McCarthy on Trademarks & Unfair Competition § 13:2 (4th ed.) ("Personal names are placed by the common law into that category of noninherently distinctive terms which require proof of secondary meaning for protection."). Accordingly, the Court concludes that the marks are not inherently distinctive, but rather are descriptive and thus require Plaintiff to prove the marks have achieved secondary meaning. *See Smack Apparel*, 550 F.3d at 476.

Secondary meaning is achieved where the general public identifies the primary significance of a word or phrase as the unique identifier for a particular product or service. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005). The burden is on the plaintiff to establish secondary meaning. *Id.* Whether a mark has acquired secondary meaning can be shown by a variety of different evidence: (1) length and manner of use of the mark ; (2) volume of sales; (3) amount and manner of advertising; (4) nature of use of the mark in newspapers and magazines; (5) consumer survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the mark. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998).

Having considered these factors and the competing evidence the parties have submitted on these issues, it is plain that there are genuine issues of material fact as to whether the marks REX and

8

REX REAL ESTATE have acquired secondary meaning with respect to Plaintiff.  For example, in support of its argument for secondary meaning, Plaintiff submits 103 declarations "recognizing Plaintiff's Marks as distinctive trademarks identifying and distinguishing Plaintiff's real estate services from the services and products of others, as well as clearly identifying Plaintiff as the source of its services." Dkt. No. 118-2 at 10; 118-7.  However, whether these form declarations are persuasive evidence of secondary meaning is a question for the jury.  As Defendant argues in its reply, for customer declarations to constitute effective evidence of secondary meaning, the declarations must establish that the general public associates the marks with Plaintiff.  Dkt. No. 125 at 7. *See Vision Center v. Opticks. Inc.,* 596 F.2d 111, 119 (5 th Cir. 1979).  Fact questions remain regarding whether the submitted declarations from Plaintiff's customers, vendors, and other real estate professionals, primarily within the North Texas industry, can establish that the general public associates the marks with Plaintiff.  Further, there are also genuine issues of material fact as to what regions of Texas any alleged secondary meaning extends to.  Plaintiff contends that its marks hold secondary meaning nationally (Dkt. No. 118-2 at 10-13), however Defendant submits credible evidence that Plaintiff only conducts business in the North Dallas area (Dkt. No. 140 at 15).  Notably, while Plaintiff submits several examples of news articles purportedly acknowledging the secondary meaning of Plaintiff's marks, those news sources all originate from the Dallas area.  Dkt. No. 118-2 at 12.

Whether Plaintiff has presented sufficient evidence to overcome Defendant's argument that the marks have not obtained secondary meaning is a question for the jury to determine.  Accordingly, because there are numerous questions of fact as to whether Plaintiff has a legally protectable interest in the marks, summary judgment is not proper for either party.

2.        **Likelihood of Confusion**

There are also several genuine issues of material fact as to the likelihood of confusion of the marks.  With trademark infringement cases, "the paramount question" is whether it is probable that one mark will cause confusion with another.  *Xtreme Lashes*, 576 F.3d at 226.  Courts in the Fifth Circuit consider several factors in evaluating the likelihood of confusion between two marks: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers."  *Id.* at 227.  No one factor is dispositive, and the weight given to each varies from case to case.  *Id.*  As with the existence of secondary meaning and whether a mark is generic, determining if there is a likelihood of confusion between two marks is generally a question of fact.  *Elvis Presley Enterprises*, 141 F.3d at 196.

Here, neither party has proven the absence of a fact dispute about consumer confusion.  Both parties have presented credible, competing evidence on these factors, creating numerous genuine issues of material fact and making resolution of the dispute not suitable for summary judgment.  In particular there are multiple fact issues concerning the similarity of the parties' services, whether the parties serve the same markets, and whether there has been any actual confusion.  For instance, Defendant notes that though both parties' marks use the word "Rex", the parties' actual logos are visually distinct.  Dkt. No. 140 at 21-22.  Defendant goes on to argue that while Plaintiff's business relates to commercial real estate development, such as sales of entire residential subdivisions, Defendant's business pertains to the residential real estate market and individual home owners.  *Id.* at 21-22.  As to whether there has been any actual confusion, Plaintiff cites to numerous instances where individuals have called and allegedly expressed actual confusion between the parties.  Dkt.

10

No. 139 at 15-20.  However, whether those calls were from individuals seeking to do business with Plaintiff and actually confused by Defendant's use of the mark "REX" remains a question for the jury.  As the Defendant points out, there are hundreds of other "Rex" entities involved in the real estate industry.  *See* Dkt. No. 117 at 21; Dkt. No. 140 at 1. The evidence demonstrates the existence of numerous fact issues regarding the likelihood of confusion, precluding summary judgment for either party as to Plaintiff's trademark infringement claims.

### 3.       Priority of Use

Defendant also argues that, even if Plaintiff could establish a legally protectable mark, Plaintiff's trademark infringement claims fail as a matter of law because Defendant has priority of use.  Generally, in trademark law, the first party to use a trademark becomes the holder of the mark and the "senior" user, regardless of whether that party actually registers the mark first.  *Union Nat'l Bank of Texas, Laredo, Tex*., 909 F.2d at 842-43.  The protection granted to a senior user of a mark extends only to the area of the senior user's market, or the natural area of expansion.  *See CP Interests, Inc. v. California Pools, Inc*., 238 F.3d 690, 700 (5th Cir. 2001) ("a senior user has exclusive rights to a distinctive mark anywhere it was known prior to the adoption of the junior user.").

Defendant argues that because it acquired the rights to the "REX" mark from Azavea, a third party which held the disputed REX mark since 2002, Defendant holds the priority of use to the REX mark. Dkt. No. 140 at 18-19.  Plaintiff's Amended Motion for Summary Judgment presents multiple issues regarding Defendant's priority of use argument, however.  For example, Plaintiff argues that Defendant cannot rely on Azavea's earlier use of the REX mark for priority purposes because Defendant did not acquire Azavea's goodwill in the mark. Dkt. No. 139 at 22-23.  Where a

trademark is transferred to be used on a product or service that differs from the prior use, no goodwill transfers. *See CP Interests,* 238 F.3d at 701. Plaintiff argues that Azavea used the REX mark in connection with downloadable software, which though related to real estate, differs from Defendant's use of the mark in connection with residential real estate brokerage. Dkt. No. 139 at 22-23.

Further, Plaintiff raises genuine questions of material fact as to whether Azavea abandoned its use of the REX mark. Plaintiff contends that in March 2010, Azavea ceased using the REX mark publicly without intent to resume use of the mark. *Id.* If Azavea abandoned the REX mark, then any purported assignment of the mark or its goodwill is invalid. *See Allied Lomar, Inc. v. Lone Star Distillery LLC*, 731 Fed. Appx. 367, 368 (5th Cir. 2018). Moreover, questions of fact remain as to whether Azavea's use of the REX mark, even if considered the senior mark, ever extended to the Texas market such as to convey priority of use. *See Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 489 (E.D. Tex. 2020). Accordingly, Defendant fails to prove that it is entitled to summary judgment on Plaintiff's trademark infringement claims on the basis of its priority of use argument.

### 4.   Laches

Lastly, Defendant asserts that Plaintiff should be estopped from asserting rights to the marks due to laches. Laches is "inexcusable delay that results in prejudice to the defendant," and involves three elements: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013); *see also Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 357 n. 11 (5th Cir. 2011). The time period for laches starts when Plaintiff knew or should have known of

the infringement. *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982) (stating the period for laches "begins when an owner of a mark first has knowledge of the accused use.").

Here, Defendant contends that "the laches clock began on January 17, 2006, when the USPTO granted Azavea its 'Rex' registration," thus arguing that Plaintiff's twelve year delay in bringing suit is unreasonable. Dkt. 140 at 26. As discussed above, there are several issues with Defendant's arguments regarding the level of protection afforded to the marks by virtue of Azavea's transfer. Defendant fails to meet its burden to demonstrate that summary judgment is warranted on its defense of laches. Rather, the record demonstrates that once Plaintiff became aware that Defendant had entered the real estate market in Texas in early 2018, Plaintiff promptly issued a cease and desist letter on May 10, 2018 and subsequently filed the instant suit on May 18, 2018. Dkt. No. 139 at 9. Accordingly, Defendant's laches argument is without merit.

**B.    Permanent Injunction**

Plaintiff's Amended Motion for Summary Judgment also seeks a permanent injunction against Defendant, to prevent ongoing trademark infringement. *See* Dkt. No. 139 at 25-26. The Supreme Court has held that a plaintiff seeking a permanent injunction must satisfy a four factor test before a court may grant such relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). The plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* Because the Court finds that Plaintiff has not established

Defendant's liability as to its trademark infringement claims, the Court recommends Plaintiff's request for permanent injunctive relief be denied at this time.

## C.    Attorney's Fees

Plaintiff also requests an award of attorney's fees.  Dkt. No. 139 at 6.  The Lanham Act permits a prevailing plaintiff to recover its costs of action in "exceptional" cases.  15 U.S.C. § 1117(a).  "[A]n exceptional case is one where: (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016).  Factors that a court may consider include, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The moving party must establish their entitlement to fees by a preponderance of the evidence.  *Id.* Here, Plaintiff has not provided any evidence, much less a preponderance of evidence, that this case qualifies as "exceptional" such to warrant an award of fees

### IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 130) in its entirety.  The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Defendant's Motion for Summary Judgment (Dkt. No. 140) in its entirety as well.

14

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(c) (2006);  *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985);  *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009).

SIGNED this 21st day of July, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE